## Laura U. Wickes et al., Appellants, v. Hugh P. Walden et al., Executors, etc., Appellees.

### Gen. No. 15,538.

1. ADMINISTRATION OF ESTATES—*how section 70 construed.* Section 70 of the Administration Act which bars claims against an estate if not presented within the prescribed time, is to be strictly construed and its operation is not to be extended beyond the letter of the statute as at present construed by the courts of this state.

2. ADMINISTRATION OF ESTATES—*what claims not barred by section 70.* Failure to present against a decedent's estate within the time fixed by section 70 of the Administration Act, does not bar equity from granting relief as against a claim or claims which consist in an obligation imposed by a decree of divorce to pay taxes, assessments and the cost of repairs on premises conveyed to the wife of such decedent pursuant to such decree under a covenant of such decedent made binding upon his executors and administrators to pay such obligations as they arise during the lifetime of such wife.

BAKER, P. J., dissenting.

Bill in equity. Appeal from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding. Heard in this court at the March term, 1909. Reversed and remanded. Opinion filed April 13, 1911. Rehearing denied April 22, 1911.

WILLIAM P. BLACK, for appellants; MASON & MASON and C. D. F. SMITH, of counsel.

F. B. JOHNSTONE and ALBERT L. HOPKINS, for appellees.

MR. JUSTICE BROWN delivered the opinion of the court.

This appeal is from a decree sustaining a demurrer to a bill in equity, and on the complainants announcing that they would abide by their bill dismissing the same for want of equity.

The demurrer was in effect general, although it contained this paragraph assigning a special reason for demurring:

"Said defendants also show that it appears from the face of the bill as amended that the right of action of said complainants, if any ever existed, has been barred by the statutes of the State of Illinois, and especially by Section 70 of Chapter 3 of the Revised Statutes of Illinois, entitled 'An Act in Regard to the Administration of Estates'."

We are called on, therefore, in considering the appeal only to determine whether such a case was stated by the bill in question as entitled the complainants, in view of the statute referred to in the demurrer, to any relief at the hands of a court of equity.

The bill was brought by Laura U. Wickes, Laura Annette Wickes Felt, Florence Lillian Johnstone and Thomas H. Wickes against Hugh P. Walden and William Burry, the Executors of the will of Thomas H. Wickes, deceased.

Laura U. Wickes was before October 31, 1894, the wife of Thomas H. Wickes. On that date she filed a petition for a divorce from him, and at some time thereafter, not exactly stated in the bill in the case at bar (but which must have been before March 6, 1895), the Circuit Court of Cook county granted the divorce on her prayer, and for her husband's fault. The other complainants, L. A. W. Felt, F. L. Johnstone and F. H. Wickes, were the children of Laura U. Wickes and her husband, Thomas H. Wickes, now deceased.

The material allegations of the bill (which was once amended before its disposition) state this case:

In her petition for a divorce besides praying for a divorce for certain causes from said Thomas H. Wickes, Laura U. Wickes asked for alimony and the custody of her three children.

After the decree granting the divorce was entered a supplemental decree concerning alimony was recorded in the same cause. This supplemental decree, in addition to ordering Thomas H. Wickes to convey in fee simple certain other property to the complainant, Laura U. Wickes, directed him within three days

to execute to Laura U. Wickes and her three children (who are all the complainants in the case at bar) deeds of certain described improved premises, which we may call shortly 3645 Grand Boulevard, which deeds should convey to Laura U. Wickes a life estate, and to the three children the remainder in fee with the reservation of a life estate to Thomas H. Wickes, the grantor, if he should survive Laura U. Wickes.

The decree then provided that the defendant, Thomas H. Wickes, should pay the principal and interest of a mortgage of $7500 resting on said property, and that he should also *"pay all taxes and other governmental charges levied or to be levied on said premises No. 3645 Grand Boulevard during the life of said complainant;"* that he should *"also keep said premises at all times in good tenantable condition and insured in a sum of not less than seventy-five hundred dollars ($7500) in insurance companies of good standing against loss or damages by fire;* and that immediately upon the payment of any such taxes or fire insurance premiums he should deliver to said complainant the original receipts therefor or duplicates thereof."

In accordance with this decree Thomas H. Wickes made and delivered a deed (which was recorded March 6, 1905) of a life estate in 3645 Grand Boulevard to Laura U. Wickes, and another (recorded on the same day) of the remainder in fee (with a reservation of a life estate to himself in case he should survive Laura U. Wickes) to his three children, who are co-complainants with Laura U. Wickes in the present cause; there being a clause also in the deed giving a right of survivorship among the children if any one or more of them should die without issue, and reserving a reversion to the grantor if they all should die without issue.

This deed contained also this covenant:

"And the said grantor *for himself, his executors and administrators,* hereby covenants and agrees to

and with said grantees both jointly and severally and with their respective heirs, executors and administrators both jointly and severally *that he will pay all taxes and assessments now levied or to be levied hereafter on said real estate, all insurance premiums and costs of repairs on and to said real estate and the improvements thereon during the existence of the said life estate of said Laura U. Wickes* and during such time after the termination of said life estate as he, said grantor, shall use and enjoy the said premises or receive the rents, issues and profits thereof.''

Thomas H. Wickes paid the principal and interest of the mortgage indebtedness on 3645 Grand Boulevard as directed by the decree, and also as long as he lived paid the taxes on said premises and kept them in repair and insured. March 28, 1905, he died, leaving a will which was probated May 10, 1905. He left a large estate, consisting of both real estate and personal property, an estate more than sufficient to discharge all his obligations ''whether then due or to become due thereafter'' and to pay all legacies and bequests provided for in said will and leave a large surplus. By his will he appointed the defendants, Hugh P. Walden and William Burry, executors of it, and (by the only clause of the will which is set forth in the bill herein except that appointing executors) gave and devised to his executors ''all the rest and residue of his estate both real and personal and wheresoever situated.'' He directed by the same clause that his executors should convert said real and personal estate into money as soon as practicable without sacrifice, and gave them full power of sale and conveyance of it.

The executors in large measure have reduced to possession the personal property of the said estate and converted it into cash. They have paid all claims against the estate proven in the Probate Court, but have made no distribution of the personal estate. They have in their hands moneys of the estate to the amount of several thousands of dollars.

But although they have known ever since they as-sumed the duties of executors, of the provisions in the supplemental decree in the divorce proceedings and of the covenant hereinbefore set forth in the deed by Thomas H. Wickes to his three children of 3645 Grand Boulevard, they have refused and now refuse to pay the taxes on said property, and have refused to make repairs on it which are necessary to make the house habitable and preserve it from destructive waste, and have refused to insure it or to pay anything towards insuring it; "in other words," as the bill says, "said executors have refused to perform any of the obligations imposed upon said Thomas H. Wickes, deceased, by said supplemental decree" (and it might have been added, which by deed he covenanted for himself and his executors to perform), "or ad-vance any money therefor, unless ordered to do so by a decree or order of a court of equity in a proceeding brought for that purpose."

In consequence of this refusal, a refusal persisted in notwithstanding repeated demands and requests of the complainants, there were unpaid when this bill was filed on April 25, 1908, the taxes for 1905, pay-able in 1906, and the taxes for 1906, payable in 1907, and the taxes for 1907, payable in 1908. The premises had been sold for the taxes of 1905, and with the pen-alties and costs the amount necessary for redemption was $215.52. For 1906 the taxes amounted to $165.38, with interest for some months, and for 1907 to $147.61.

Repairs which should have been made before the bill was filed would cost at least $500, and the house ought to be kept insured.

The prayer of the bill is that there may be a decree entered reviving the proceedings in the divorce suit of Laura U. Wickes against Thomas H. Wickes, now deceased, and making the executors of his will de-fendants in his stead, "for the purpose of further carrying out the provisions of said supplemental decree in said divorce suit," and compelling them—

as the said Thomas H. Wickes if living could have been compelled—to perform the requirements of said supplemental decree in said divorce proceedings in respect to taxes levied on 3645 Grand Boulevard and in respect to repairs upon said premises and insurance thereon.'' Such other or further relief as may be appropriate is also prayed.

Disregarding for the present the prayer of the bill and the particular means, if there be any, by which the complainants may be relieved it is obviously true that the bill makes a case which appeals strongly to equitable jurisdiction for some relief.

We may dismiss from consideration the amount which was actually due on the land for taxes for the year 1905 and which was ascertained and fixed long enough before May 10, 1906, to have allowed the complainants to have paid the same and filed a claim in the Probate Court against the estate of Thomas H. Wickes for reimbursement before May 10, 1906. The court agrees in holding that as to said amount, the Administration Statute described in the demurrer is a bar to any relief except from after discovered assets. That statute provides that all demands against the estate of any testator not exhibited within one year from the granting of letters testamentary shall be forever barred unless the creditors shall find other estate of the deceased not inventoried or accounted for by the executor, in which case their claims shall be paid *pro rata* out of such subsequently discovered estate.

But this statute was held to bar any relief in that part of the case stated in the bill, which was independent of any ascertained or ascertainable amount.

Yet here is a woman who was granted a divorce for her husband's fault. Had she remained his wife she would have been entitled, despite any will he might make, to a considerable share in his large personal estate and to dower in all his real estate. Practically as a part of the decree in divorce an arrangement was ordered by the court by which she was to receive for

her life, residence property to be released from all encumbrance and kept free from tax liens and all other charges. Her former husband was during her life to pay taxes, insurance and repairs, and after her death, if she died first, the husband was to have a life estate, still obligated to pay all carrying charges and to hand it over to his three children in fee simple clear of liens or charges, reserving only a reversion in this remainder if the children died without issue.

It is very evident that nothing was farther from the thoughts of the parties, counsel or court, when this arrangement was made, that there was to be read into it a condition that if the husband died before the wife, the important and essential obligations concerning the property, which may be said to have given to it much of its value to the wife as a settlement of alimony, were to cease.

This proposition is further confirmed by the covenant made by the husband in the deed, by which, with a promptness which suggests that the arrangement of the supplemental decree may have been of his own seeking, or at least a matter of amicable agreement, he made effective the orders of that decree.

When in that deed he covenanted expressly for himself *and his executors and administrators* that he or they would pay taxes, repairs and insurance so long as his wife should live and after her death, if she died first, until his three children took the fee simple, it is not conceivable that his intention was that the representatives of his estate, in the event of his dying before his wife, could not be compelled to carry out these agreements for more than a single year by any means whatever.

But this must be the result of the contention of the defendants and the holding of the lower court that no relief is possible under this bill. The obligation is to be considered a claim, and claims are barred after one year from the granting of letters testamentary by a short statute of limitation. Such is the inexorable law, it is claimed, however hard or unjust a situ-

ation may thereby arise. The old maxim that there is "no wrong without a remedy" is certainly meaningless in this case, and our jurisprudence but a halting one, if this position is well taken. For there is no way imaginable in which, within a year after the letters testamentary, the taxes and governmental assessments for an indefinite series of years could be determined in amount. They would not be due and it would not be possible to pay them. Nor would the amount necessary for repairs and insurance in the indefinite future be ascertainable or payable.

But, say the defendants, the Supreme Court has in many cases laid down the rule that no claim can be allowed against the estate of a surety before the obligation under a bond has matured, and that "if the statutory period for the filing of claims has expired before the contingency has occurred and the liability matured, the creditor is remediless as against the estate of the deceased surety."

We will later consider the cases alluded to, but it seems to be the place here to say that in the opinion of a majority of the court the "claims," or "obligations" as we prefer to call them, on the executors in this case are not "contingent" in any proper or true sense of that word. They are future as to maturity; they are undetermined and unascertainable in amount in the present or until they become successively due; but they are certain as death itself, with which indeed "taxes" have been justly enough associated in a common simile as the very exemplification of certainty.

To proceed, however, with the statement of the situation in the case at bar.

After the decree and the deed, by a will which whenever made speaks as of the time of the death of the testator and may be properly supposed to be his deliberate disposition of his property, in view and with full consideration of the provision he had made for an injured wife and his and her children, he leaves a large estate, real and personal, to his executors as

residuary legatees, with full power of conversion, sale and conveyance. We are not informed by the bill on what, if any, trusts this devise was made, as we might well have been; but as the bill stands, can it be supposed that this estate was left to them, either for their own use or that of others, except with the burden of providing means for the carrying out of an obligation, judicially determined, solemnly covenanted, and founded in clear and manifest considerations of justice? We think not, and therefore are of the opinion that if where the common law imposes a duty and no other remedy could be shown to exist, a court of common law of full jurisdiction would interfere by mandamus (see Butler, J., in Rex v. Bp. of Chester, 1 Durnford & East. 404; Grose, J., in Rex v. Stafford, 3 Durnford & East. 652), equity, with its more flexible and adaptable machinery—having, moreover, full jurisdiction over the administration of estates and the execution of trusts, and being able to vary its relief in a great variety of directions—can in this case, by suitable decree, adjust the burden by some device of compensation in a lump sum (based on life tables), which will enable the settlement of the estate to be finally made and the executors discharged; or can order segregated and invested a suitable sum, the yearly income of which shall be sufficient to pay the governmental impositions and the other carrying charges involved; or can indeed, if need be, directly decree that the executors shall pay annually these necessary charges, placing upon them the responsibility and risk of settling the estate and disposing of the money in their hands in a manner consistent with the order. We do not, in deciding this appeal from a decree dependent on the decision on the demurrer, deem it necessary to go farther in pointing out methods of relief or whether the particular prayer of the bill for a revival of other proceedings is well made.

The only question actually before us is whether the complainants are entitled to any relief, not how much or its nature. If they are so entitled, the demurrer

should be overruled and the defendants ruled to answer. If, then, the defendants should stand by their demurrer, it will be for the court below, if it chooses, nevertheless to hear evidence to determine what relief is possible and appropriate. If the defendants should answer, the cause can take the usual course.

The defendants, however, insist that no relief can be granted because the decisions of the Supreme Court stand in the way, and that there is really no distinction that can reasonably be made on principle between the case at bar and Stone v. Clark, 40 Ill. 411, Snydacker v. Swan Land Co., 154 Ill. 220, Morse v. Pacific Ry. Co., 191 Ill. 356, and Pearson v. McBean, 231 Ill. 536.

Of course, if the defendants are right in this contention, we are not at liberty in this court to allow our opinions on the justice, abstract or practical, of the complainants' demands, to overrule decisions which are binding on us. But a majority of the court thinks that there are factors in the case at bar sufficient to take it out from the operation of a strict rule laid down in those cases, the operation of which we are not inclined to extend. They have been hereinbefore stated or suggested. The duties and burdens which are claimed here to fall on the executors are neither accrued claims actually due, nor are they contingent ones which may never exist. They are certain, but unascertained and unascertainable in amount. Neither assessments on corporate stock, which it may be presumed *may* never be made, but which are made in accordance with a contingent power residing in the directors or creditors, implied or expressed in the contract of ownership, which were the matters involved in Syndacker v. Swan Land Company and Morse v. Railway Company, nor the happening of a contingency—which it is to be assumed was not even expected—provided for in an indemnifying bond, which was the matter involved in Stone v. Clark, nor the setting aside of an assignment of a judgment which

had been the consideration of the payment of money, as in Pearson v. McBean, make cases at all like the present in their facts. What was done in these cases in effect was, in the interest of an early settlement of estates, to read into a contingent contract of indemnity or stock ownership a short statute of limitations, which rendered such contract unenforceable a year after the maker died.

We do not think, as we have said, that such a provision can properly be read into the decree or the deed involved in this case.

Nor in any of the said cases existed the question of the obligations enforceable in equity which executors (who, it may be noted in passing, although qualifying in and regulated by the Probate Court, derive primarily their authority and duties from the appointment and will of the testator) fall under, when they are, either for their own benefit or in trust, residuary devisees of the testator, who has covenanted expressly for them as well as for himself that certain things shall be done annually during the life of another.

The point made by appellees that this bill cannot lie, because as amended it shows that appellants' proper remedy, if any, is by action at law for breach of covenant, needs no discussion by us.

It is plain that there is no sufficient remedy at law in this case for a continued refusal to pay either the taxes already levied and matured or those undetermined in amount, sure to come in the future in successive years. A specific performance of covenants is often decreed where there is no sufficient, adequate and complete remedy at law.

It is the opinion of the Court that the decree of the Circuit Court in this case, sustaining the demurrer and dismissing the bill, should be reversed and the cause remanded, with instructions to overrule the demurrer and proceed further with the cause.

*Reversed and remanded.*

MR. PRESIDING JUSTICE BAKER dissents.